**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAWRENCE CROSS,**

                          **Plaintiff,**

          **-vs-**                                              **3:10-CV-1179**

**STATE FARM INSURANCE COMPANY, and**
**JOHN DOE,**

                          **Defendants.**[1]
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                          **DECISION & ORDER**

## I.     INTRODUCTION

          Plaintiff Lawrence Cross ("Plaintiff") commenced this action *pro se* asserting claims

arising from an injury he allegedly suffered on October 2, 2007 "when a 2004 Toyota

Camry Solara suddenly and unexpectedly accelerated striking plaintiff." See 2nd Am.

Compl. ¶ 11, dkt. # 36.  After the Court decided State Farm Mutual Automobile Insurance

Company's[2] ("State Farm" or "Defendant") Rule 12(b)(6) motion, see dkt. # 60, Plaintiff

has two remaining claims: breach of contract and violation of the New York No-Fault Law.

          Presently before the Court are Defendant's motion for summary judgment [dkt. #

_____

          [1] Plaintiff's claims against Toyota Motor Corp. and Toyota Sales, U.S.A., Inc. have been severed from
his claims against State Farm Mutual Automobile Insurance Company and transferred to the Central District
of California by the United States Judicial Panel on Multidistrict Litigation. See 04/26/11 JPMDL Order, dkt. #
26.

          [2] State Farm asserts that it was incorrectly sued as "State Farm Insurance Company."

1

108]; Plaintiff's cross-motion for summary judgment [dkt. # 117]; Plaintiff's motion challenging the Court's decision to strike his reply/sur-reply papers [dkt. # 123]; Plaintiff's motion to appoint counsel for trial [dkt. # 125], and Plaintiff's motion for a judicial settlement conference [dkt. # 126].

## II.    STANDARD OF REVIEW

The Court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[3] If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual

---

[3]When considering cross-motions for summary judgment, the Court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002)(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc., 996 F.2d at 1461.

issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). Fed. R. Civ. P. 56 provides that an affidavit submitted in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir.1997) (citations omitted). "To be admissible in a summary judgment proceeding, an affidavit must be sworn to before an officer authorized to administer oaths, such as a notary public." Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC, 2011 WL 6329194, at *4 n. 2 (E.D.N.Y. Dec.16, 2011) (citation omitted). In the alternative, "under 28 U.S.C. § 1746, a unsworn declaration made under penalty of perjury has the same evidentiary weight as an affidavit if it includes language in substantially the same form as 'I declare (or certify, verify, or state) that the foregoing is true and correct' followed by a signature and date of execution." Id. (citations omitted); see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65–66 (2d Cir.1999) (same). Hearsay evidence that would not be admissible if testified to at trial is not competent material on a Rule 56 motion. Sarno v. Douglas Elliman- Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).

In determining whether to grant summary judgment, the Court must view all admissible facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007). The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual

3

argument based on "conjecture or surmise." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).

The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue. N.D.N.Y.L.R. 7.1(a)(3). Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

<u>Id.</u> (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. <u>See</u> <u>N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions

4

and failed to include any record citations."); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n. 1 (2d

Cir. 1998)(*per curiam*)(accepting as true material facts contained in unopposed local rule

statement of material facts); <u>Meaney v. CHS Acquisition Corp.</u>, 103 F. Supp.2d 104, 108

(N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where

non-movant's response "set forth *no* citations – specific or otherwise – to the

record")(emphasis in original); <u>McKnight v. Dormitory Auth. of State of N.Y.</u>, 189 F.R.D.

225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3)

statement that are not specifically controverted by Plaintiff to be admitted"); <u>Osier v.

Broome County</u>, 47  F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted

all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages

of purported facts without any indication where those facts can be located in the record").

   "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual

requirements of summary judgment." <u>Viscusi v. Proctor & Gamble</u>, 2007 WL 2071546, at *

9 (E.D.N.Y. July 16, 2007); <u>see also</u> <u>Faretta v. California</u>, 95 S. Ct. 2525, 2541 n. 46

(1975)("The right of self-representation is not a license . . . not to comply with relevant

rules of procedural and substantive law.").  Thus, while the Court must construe a *pro se*

litigant's pleadings and papers liberally and interpret them to raise the strongest

arguments that they suggest, <u>Govan v. Campbell</u>, 289 F. Supp.2d 289, 295 (N.D.N.Y.

2003);[4]  <u>Veloz v. New York</u>, 339 F. Supp.2d 505, 513 (S.D.N.Y.  2004), the application of

this lenient standard does not relieve a *pro se* litigant of the requirement to follow the

procedural formalities of Local Rule 7.1(a)(3).  <u>Govan</u>, 289 F. Supp.2d at 295; <u>see also</u>

---

   [4] To construe pleadings liberally means the Court must view the submissions by a more lenient
standard than that accorded to "formal pleadings drafted by lawyers." <u>Govan</u>, 289 F. Supp.2d at 295.

<u>Edwards v. INS</u>, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.").

## III.    BACKGROUND

Plaintiff has not: (1) submitted an opposing Statement of Material Facts despite being advised of this obligation;[5] (2) submitted a Statement of Material Facts in support of his cross-motion; (3) submitted an affidavit sworn to before an officer authorized to administer oaths, such as a notary public; (4) submitted an unsworn declaration made

---

[5]Plaintiff was served with the Northern District's standard summary judgment notification for *pro se* litigants, <u>see</u> dkt. # 110-1. This notification provided:

The defendants have moved for **summary judgment** under Federal Rule of Civil Procedure 56.  A motion for summary judgment asks the Court to make a final judgment dismissing some or all of your claims. If you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**. Under Local Rule 7.1 (a), to file a proper response to this motion, you must submit the following papers:

(1)    A **response to the defendants' statement of material facts** that admits and/or denies each of the defendants' assertions in matching numbered paragraphs, and that supports each denial with citations to record evidence;

(2)    Copies of all **record evidence** that you cite in your response to the defendants' statement of material facts; **AND**

(3)    A response memorandum of law (no more than 25 pages long and formatted in compliance with Local Rule 10.1) that responds to each of the legal arguments contained in the defendants' memorandum of law, and that contains any additional legal arguments you may have in response to the defendants' motion for summary judgment.

**WARNING:** If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**. If you do not submit copies of record evidence in support of your denials**, the Court may deem defendants' factual statements to be true**. If you do not submit a proper response memorandum of law, **the Court may deem you to have conceded the defendants' arguments**.  If you do not respond to this motion properly (or at all), summary judgment may be entered against you, meaning that **SOME OR ALL OF YOUR CLAIMS MAY BE DISMISSED.**

Dkt. # 110-1 (emphasis in original, footnotes omitted)**.**

under penalty of perjury;[6] or (5) submitted other non-hearsay, admissible evidence. Accordingly, the properly supported facts set forth in Defendant's "Statement of Facts Pursuant to Local Rule 56" are deemed admitted for purposes of this motion. N.D.N.Y.L.R. 7.1(a)(3). Unless indicated otherwise, the following facts are taken from Defendant's Statement of Facts.

**a. The Policy**

State Farm issued an automobile liability insurance policy to Plaintiff's wife, Sharon L. Cross, bearing policy number 44 4469-C04-52B which was in effect on October 2, 2007 ("the Policy"). The Policy contained a Mandatory Personal Injury Protection Endorsement that provided in pertinent part:

Conditions

****

Proof of Claim; Medical, Work Loss, and Other Necessary Expenses.

****

Upon request by the Company, the eligible injured person or that person's assignee or representative shall:

(a) execute a written proof of claim under oath;

(b) as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the same;

(c) provide authorization that will enable the Company to obtain medical records; and

---

[6]Plaintiff's Second Amended Complaint contains factual allegations made "under penalty of perjury." See 2nd Am. Compl., dkt. # 36. However, the Court has examined this pleading and found that it contains no allegations made on the basis of personal knowledge that are pertinent to any material issue on the pending summary judgment motions.

(d) provide any other pertinent information that may assist the Company in determining the amount due and payable.

### b.  Notice of a No-Fault Claim

On October 22, 2007, after State Farm was placed on notice of a no-fault claim by Plaintiff arising on October 2, 2007, State Farm sent Plaintiff the statutorily required New York Motor Vehicle No-Fault Insurance Law Cover Letter and Application for No-Fault Benefits. Lindley Aff., ¶ 4.[7]  The same date, State Farm sent Plaintiff correspondence requesting that he contact State Farm to provide a statement of facts as to how the October 2, 2007 incident occurred. Id. ¶ 5.[8]  Because State Farm received no response to its October 22, 2007 correspondence, it sent Plaintiff a second New York Motor Vehicle No-Fault Insurance Law Cover Letter and Application for No-Fault Benefits on November 28, 2007. Id. 6-7.  Plaintiff did not return the No-Fault Application for Benefits until around December 7, 2007. Id. ¶ 8.

On December 7, 2007, State Farm sent Plaintiff a letter advising that his No-Fault Application for Benefits was not completely filled out. Id. ¶ 9. State Farm requested Plaintiff sign the application in all required areas and provide a detailed description of his injuries. Id.  Further, State Farm advised Plaintiff that his claim would be delayed pending receipt of this information. Id.  In addition, State Farm advised Plaintiff that it might have no duty to provide no-fault benefits under the Policy because "it was questionable whether

---

[7]Kathy Lindley attests that she is a Team Manager in State Farm's Ballston Spa, New York office; her team was assigned to a no-fault claim submitted by Mr. Lawrence Cross arising out of an October 2, 2007 incident; and although Bonnie Winslow, a Claim Representative on her team was assigned to handle Mr. Cross' claim, Ms. Lindley is personally familiar with the complete no-fault file and its handling. Lindley Aff. ¶ 1.

[8]Ms. Lindley attests that all mailings referenced in her affidavit were sent according to State Farm's normal business practice as outlined in the Affidavits of Michael Bellamy and George Perry.

8

bodily injury was caused by an accident." Id. ¶ 10.

### c. Exercise of Right to Conduct Examination Under Oath

On January 4, 2008, State Farm notified Plaintiff that it was exercising its right under the Policy to conduct an Examination Under Oath ("EUO"). Lindley Aff. ¶ 11. Plaintiff was advised that the law firm Levene, Gouldin & Thompson, LLP would be conducting the EUO and that he had the right to have counsel present at his expense. Id. ¶ 12. Thereafter, State Farm retained Levene, Gouldin & Thompson, LLP, Robert G. Bullis, Esq. of counsel, to conduct EUOs of Plaintiff and his wife.

On January 9, 2008, Attorney Bullis's office served Plaintiff and his wife, via regular and certified mail sent to 47 Beaver Street, Cooperstown, NY 13326-1227 ("Plaintiff's address"),[9] with an EUO notice indicating that their EUOs would be conducted on January 21, 2008 at 10:00 a.m. at the Otsego County Office Building in Cooperstown, New York. Bullis Aff. ¶¶ 2-3.[10] The EUO Notice indicated that the purpose of the EUOs was to take the Plaintiff and his wife's statements under oath "with respect to evidence material and necessary with respect to your application for no-fault benefits, the circumstances of the October 2, 2007 accident, the nature and extent of any injury sustained in said accident, the subsequent course of treatment regarding those injuries, the reporting of such accident to State Farm, and any other material relevant and [sic] information regarding your claim herein." Bullis Aff. Ex. A.

_____

[9]This is the same address that Plaintiff used on his Application for No-Fault Benefits and that he uses in this action.

[10]Attorney Bullis indicates in his affidavit that all mailings were addressed to Plaintiff at 47 Beaver Street, Cooperstown, NY 13326-1227; mailed in accordance with the normal procedures of his office; and that at no time did he or his office receive a notice from the United States Postal Service that any mailings sent by regular mail were returned as undeliverable.

On January 16, 2008, Attorney Bullis received from Mr. and Ms. Cross an objection to the EUO notice indicating: (1) they were denied of sufficient notice, (2) they objected to "the time and place," and (3) that Plaintiff "is injured and ill and cared for by his spouse and both are not available at this time." Bullis Aff. ¶ 4 & Ex. B.  The objection further indicated that "the claimants will fully comply with article 31 of the civil rules of procedure when they are able to do so," and that "this claimant[']s attorney will be in contact with" State Farm.  Id.  On January 17, 2008, Attorney Bullis responded to Mr. and Ms. Cross' objections by proposing that the EUOs be conducted at their home. Bullis Aff., ¶ 5. Attorney Bullis also requested that Plaintiff and his wife provide him with the name and address of their counsel.  Id.

After receiving no response to his January 17, 2008 correspondence, Attorney Bullis sent Mr. and Ms. Cross a follow up letter dated February 6, 2008.  Id. ¶ 6.  This letter again requested a response to Attorney Bullis's prior letter so that he could make arrangements for their EUOs, and requested that they ask their attorney to contact Attorney Bullis or to provide him with their attorney's contact information so that Mr. Bullis could arrange for their EUOs. Id.

On February 26, 2008, because neither Mr. Cross nor Ms. Cross responded to Attorney Bullis's January 17, 2008 or February 6, 2008 correspondences, Attorney Bullis served Plaintiff and his wife with another EUO notice. Bullis Aff. ¶ 7.  This scheduled their EUOs for March 24, 2008 at 10 a.m. at the Otsego County Office Building, in Cooperstown, New York, and contained the same statement of purpose as did the prior EUO notice. Id. & Ex. E.  On March 18, 2008, Attorney Bullis received from Mr. and Ms. Cross an objection to the second EUO notice. Id. ¶ 8. This objection was identical in form

and substance to the objection Attorney Bullis received on January 16, 2008.  Id. & Ex. F.

On March 21, 2008, Attorney Bullis responded to Mr. and Ms. Cross' objections and advised that the EUOs would proceed as scheduled on March 24, 2008. Bullis Aff. ¶ 9. On March 24, 2008, Attorney Bullis appeared for the EUOs at the designated date, time, and place. Id. ¶ 10.  Mr. and Ms. Cross did not appear.  Id.  Mr. Bullis created a record of their failure to appear at the EUOs. Id. & Ex. H.

On March 25, 2008, Attorney Bullis' office served Mr. and Ms. Cross, via regular mail and certified mail sent to Plaintiff's address, with another EUO notice. Bullis Aff. ¶ 11 This third EUO notice indicated that their EUOs would be conducted on May 5, 2008 at 10:00a.m. at the Otsego County Office Building, in Cooperstown, New York.  Id. This third EUO notice contained the same statement of purpose as did the two prior EUO notices. Bullis Aff. Ex. I.  On May 5, 2008, Mr. Bullis appeared for the EUOs at the designated date, time, and place. Id. ¶ 13.  Mr. and Ms. Cross did not appear. Id.  Mr. Bullis created a record of their failure to appear at the EUOs. Id. & Ex. J.

### d.  Denial of Benefits

On May 13, 2008, State Farm was verbally advised by Levene, Gouldin & Thompson, LLP that Plaintiff failed to appear for his two scheduled EUOs. Lindley Aff. 13. On May 14, 2008, State Farm issued to Plaintiff a denial of his entire no-fault claim based upon his violation of a condition of the Policy that required him to attend an EUO. Id. ¶ 14.

### e. Medical Bills

State Farm received medical bills for treatment allegedly rendered to Plaintiff as a result of the October 2, 2007 incident from Chris Paige, PT; Dr. Anthony Cicoria; CMI;

Mary Imogene Bassett Hospital; and Hanger Prosthetics and Orthotics. Lindley Aff. ¶ 15.

State Farm also received from CMI, Dr. Cicoria, and Chris Paige, PT Assignment of

Benefits ("AOB") forms executed by Plaintiff.[11]  At the time of making its motion, State

Farm had not been provided with any revocation of the AOB forms issued to CMI, Dr.

Cicoria, or Chris Paige, PT. In opposition to the motion, Plaintiff submitted an AOB

revocation form for CMI, Dr. Cicoria, or Chris Paige, PT.  Defendant contends that these

revocations are ineffective under New York Insurance Law regulations.

### 1.  Hangar Prosthetics and Orthotics

On November 10, 2007, State Farm received a bill from Hanger Prosthetics and

Orthotics ("Hanger") for a November 2, 2007 service date. Lindley Aff. ¶ 19.  On

November 15, 2007, State Farm advised Hanger that State Farm had determined to delay

this claim pending receipt of verification from the Plaintiff in the form of Plaintiff's

Application for No-Fault Benefits.  Id.  A copy of this delay letter was mailed to Plaintiff. Id.

When Plaintiff returned his Application for No-Fault Benefits around December 7, 2007,

State Farm issued another delay letter to Hanger on December 12, 2007. Id. ¶ 20. This

advised that additional verification from Plaintiff in the form of an EUO was required. Id.  A

copy of this delay letter was also mailed to Plaintiff. Id.  State Farm issued additional delay

letters to Hanger dated January 18, 2008, February 22, 2008, March 31, 2008, and May 5,

2008 advising that State Farm was continuing to delay Hanger's claim pending receipt of

_____

[11]The AOB forms for CMI, Dr. Cicoria, and Chris Paige, PT all provide in pertinent part:

I, Lawrence Cross, ("Assignor") hereby assign to [Anthony Cicoria, MD, Chris Paige PT,
CMI], "(Assignee[s]") all rights and privileges and remedies to payment for health care
services provided by assignee to which I am entitled under Article 51 (the No-Fault statute) of
the Insurance Law.

verification from Plaintiff in the form of an EUO. Id. ¶ 21.  These letters were also mailed to

Plaintiff. Id.  On May 14, 2008, after State Farm was verbally advised on May 13, 2008

that Plaintiff failed to appear for his two EUOs, State Farm issued to Hanger a denial of its

claim based upon Plaintiff's failure to appear for his scheduled EUOs.  Id. ¶ 22. This denial

letter was also mailed to Plaintiff. Id.

### 2.  Mary Imogene Bassett Hospital

State Farm received medical bills from Mary Imogene Bassett Hospital for service

dates from October 2, 2007 through October 5, 2007.  State Farm issued a series of delay

letters to Mary Imogene Bassett Hospital similar to those issued to Hangar, and mailed

copies of these letters to Plaintiff.  See Lindley Aff. ¶¶ 23-41.  When State Farm was

advised that Plaintiff failed to appear for his scheduled EUOs, it issued denial letters to

Mary Imogene Bassett Hospital based upon Plaintiff's failure to appear for his scheduled

EUOs.  Id.  Copies of these denial letters were also mailed to Plaintiff.  Id.

## VI.    DISCUSSION

### a.  Parties' Arguments

State Farm argues that it is entitled to summary judgment on the grounds that:  (1)

Cross violated a condition precedent to insurance coverage by failing to attend scheduled

examinations under oath ("EUO"); (2) Cross cannot challenge any denials from Hanger

Prosthetics and Orthotics and Mary Imogene Bassett Hospital as he has not incurred any

expense for their services, and even if Cross can challenge those denials they were timely

denied upon Cross' breach of a policy condition to attend scheduled EUOs; and (3) Cross

lacks standing to challenge any denials issued to CMI, Dr. Anthony Cicoria and Chris

Paige, PT as he executed an Assignment of Benefits in those medical providers' favor.

Cross argues in opposition to the motion and in support of his cross-motion that: (1) he has not been afforded complete discovery; (2) his subpoena to Defendant's Insurance Agent, Joan Brown, is outstanding; (3) Defendant did not pay or deny coverage within thirty (30) days of receiving his No-Fault claim being submitted on October 31, 2007, as required by law; (4) Defendant was precluded from issuing a demand for an EUO because Defendant's investigator, Mark Augustus, had previously investigated the occurrence; (5) Defendant's conduct amounted to the intentional infliction of emotional distress; (6) a reasonable basis for the EUO was not stated in the EUO notices; (7) the question of whether Defendant's demand for an EUO was "reasonable" is a question of fact for a jury to decide; (8) he issued a revocation of the AOBs to CMI, Dr. Anthony Cicoria and Chris Paige, PT; (9) Defendant breached the contract by the aforementioned conduct; and (10) he is entitled to extra-contractual damages.

The Court will address the arguments *seriatim,* starting with Plaintiff's contentions.

### b.  Outstanding Discovery & Subpoena Response

Plaintiff's argument that Defendant's summary judgment motion cannot be decided at this time because he has not been afforded complete discovery, and because his subpoena to State Farm Insurance Agent Joan Brown is outstanding, implicates Fed. R. Civ. P. 56(d) (formerly Rule 56(f)).  Rule 56(d) requires the nonmovant to show by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition...."  As indicated above, Plaintiff has not presented a proper affidavit or declaration on this motion, so his Rule 56(d) application fails on this basis alone. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir.1994) ("A reference to Rule 56(f) [now Rule 56(d) ] and to the need for additional discovery in a memorandum of law in

14

opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit ... and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate...."). Moreover, there exists no outstanding discovery to which Plaintiff is entitled. <u>See</u> Dec. & Order [dkt. # 127].[12] Still further, Plaintiff fails to explain what material evidence he seeks to obtain from Ms. Brown, why he did not move earlier for enforcement of his subpoena to her, or why information would be material to the issues now before the Court. Based upon these facts, Plaintiff's Rule 56(d) defense to Defendant's motion is without merit.

### c. Failure to Pay or Deny No-Fault Claim within 30 Days

There is also no merit to Plaintiff's argument that Defendant failed to either pay or deny his No-Fault claim within the proper time period. New York's No-Fault Law requires the insurance carrier to either pay or deny a claim for No-Fault benefits within thirty (30) days from the date of receipt of a complete claim. N.Y. Ins. L. § 5106(a); 11 NYCRR 65–3.8(a)(1); <u>Kingsbrook Jewish Medical Center v. Allstate Ins. Co.</u>, 871 N.Y.S.2d 680, 683 (2d Dep't 2009). Plaintiff did not submit his Application for No-Fault Benefits until December 7, 2007, and when he did Defendant promptly advised him that the form was not completely filled out and signed in all required places. Furthermore,

> [t]he no-fault regulations provide automobile insurers with a verification process to obtain additional information designed to ferret out illegitimate or fraudulent claims. Thus, while the 30-day period after which claims not paid by the insurer are considered overdue normally commences when a claimant submits the relevant forms, when the insurer requests additional information, the period begins when the claimant has satisfied that request and the insurer receives verification of all the relevant information. In effect, a timely

---

[12]Denying Plaintiff's appeals [dkt. # 109, dkt. # 111, dkt. # 112 ] from Magistrate Judge Peebles' most recent Discovery Order [dkt. # 106].

request for additional information extends or tolls the 30-day period for
paying or denying the claim until the insurer receives all of the relevant
information it requested even if the requests are made by letter rather than
by the prescribed form.

70A N.Y. Jur. 2d Insurance § 1916 (Thomson Reuters, 2013)(citations omitted); see also

Elmont Open MRI & Diagnostic Radiology, P.C. v. New York Cent. Mut.Fire Ins. Co.,

954 N.Y.S.2d 736, 739 (N.Y. Dist. Ct. 2012).

Before Plaintiff returned the completed Application for No-Fault Benefits, Defendant

notified him that it intended to examine him under oath. An EUO is a recognized

procedure for seeking additional verification, Quality Psychological Services, P.C. v.

Hartford Ins. Co., 38 Misc.3d 1210(A), Slip Copy, 2013 WL 172312, at * 3 (N.Y. City  Civ.

Ct. Jan. 15, 2013), and a condition precedent to coverage under the Policy.  Thus, the 30-

day time period in which to pay or deny Plaintiff's claims was tolled during the period

Defendant sought to conduct the EUO of Plaintiff.  See Morris Medical, P.C. v. Amex

Assur. Co., 37 Misc.3d 140(A), Slip Copy, 2012 WL 6554080, at * 2 (N.Y. Sup. App. Term,

Dec. 07, 2012)("Defendant established that the time to pay or deny these claims had been

tolled by the timely issuance of EUO scheduling letters." )(citing  St. Vincent's Hosp. of

Richmond v. Government Empls. Ins. Co., 50 A.D.3d 1123 (2d Dep't  2008)).  Because

Plaintiff  failed to appear for either of the two properly scheduled EUOs, the claims in this

case were timely denied. Id.

### d.  Reasonableness of EUO

Plaintiff argues that Defendant's motion must be denied because the notices for the

EUOs did not state a reasonable basis for the EUOs, and because the question of the

reasonableness of the EUOs is for a jury to decide.  The arguments are without merit.

16

The New York State Insurance Department Regulations provide that "[n]o action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage .... Upon request by the Company, the eligible injured person or that person's assignee or representative shall: ... (b) as may reasonably be required submit to examinations under oath by any person named by the Company and subscribe the same" (11 NYCRR 65–1.1; and see GLM Med., P.C. v. State Farm Mut. Auto. Ins. Co., 30 Misc.3d 137[A], 2011 WL 565616 [App. Term 2nd, 11th & 13th Jud. Dists.2011] ["(a)n appearance at an EUO is a condition precedent to the insurer's liability on the policy"] ).

Five-Boro Psychological and Licensed Master Social Work Services, PLLC v. Geico General Ins. Co., 954 N.Y.S.2d 433, 435 (N.Y. City Civ. Ct. 2012); see also 11 NYCRR §65-3.5(e).[13]

Plaintiff has provided no citation for the proposition that the "reasonableness" of the EUO must be set forth in the EUO notice, and the Court finds none.  Further, Plaintiff was advised by State Farm on December 7, 2007 that State Farm might have no duty to provide no-fault benefits under the Policy because "it was questionable whether bodily injury was caused by an accident." Lindley Aff. ¶ 10.  Shortly thereafter, and before Plaintiff submitted his completed No-Fault Application for Benefits form, State Farm advised him that State Farm was exercising its right under the Policy to examine him under oath.  Id. ¶ 11.  The EUO notices served on Plaintiff indicated that the purpose of the EUOs were to obtain Plaintiff and his wife's statements under oath "with respect to evidence material and necessary with respect to [his] application for no-fault benefits, the

---

[13]    When an insurer requires an examination under oath of an applicant to establish proof of claim, such requirement must be based upon the application of objective standards so that there is specific objective justification supporting the use of such examination. Insurer standards shall be available for review by department examiners.

11 NYCRR §65-3.5(e).

circumstances of the October 2, 2007 accident, the nature and extent of any injury sustained in said accident, the subsequent course of treatment regarding those injuries, the reporting of such accident to State Farm, and any other material relevant and [*sic*] information regarding your claim herein."  Under these circumstances, it would have been readily apparent to a reasonable person that the purpose of the EUO was to gain information impacting the question of whether Plaintiff's bodily injury was caused by an accident - an objectively reasonable basis for the EUO.

Moreover,

> [b]ecause an appearance at an EUO is a condition precedent to an insurer's liability under [a] policy and to the commencement of an action to recover under the policy, [a] plaintiff is required to preserve [his] objection to the reasonableness of the EUO requests prior to commencing suit. Failure to so object bars the plaintiff from raising the objection as an excuse for the claimant's non-appearances at scheduled EUOs (see Crescent Radiology, 31 Misc.3d 134[A]; Jamaica Medical Supply, Inc., 36 Misc.3d 160[A]; Viviane Etienne Medical Care, P.C., 35 Misc.3d 127 [A] ).

Five-Boro Psychological, 954 N.Y.S.2d at 435.[14]

Although Plaintiff objected to the time and place of the EUOs, he lodged no pre-suit objection to the reasonableness of the EUO and failed to appear at the scheduled EUOs. Therefore, Plaintiff's current objection to the reasonableness of the EUO provides him no basis for relief.  See Five-Boro Psychological, 954 N.Y.S.2d at 435 ("The Appellate Term has determined that where a plaintiff fails to respond to the defendant's EUO requests it

---

[14] Five Boro Psychological, 954 N.Y.S.2d at 435 further provides:

The purpose of the No–Fault regulations is to promote "prompt resolution of injury claims, [limit] cost to consumers and alleviat[e] unnecessary burdens on the courts" (Pommells v. Perez, 4 N.Y.3d 566, 571, 797 N.Y.S.2d 380, 830 N.E.2d 278 [2005] ). Allowing the plaintiff to wait until after [he] commences suit to raise an objection to an EUO request would frustrate the intent of the No–Fault statute (see Canarsie Chiropractic, P.C. v. State Farm Mut. Auto. Ins. Co., 27 Misc.3d 1228[A], 2010 WL 2105860 [Civ. Ct. Kings County 2010] ).

'will not be heard to complain that there was no reasonable basis for the EUO request.'");[15] Morris Medical, P.C. v. Amex Assur. Co., 37 Misc.3d 140(A), Slip Copy, 2012 WL 6554080, at * 2 (N.Y. Sup. App. Term, Dec. 07, 2012)("Moreover, inasmuch as it is uncontroverted that Plaintiff had failed to respond, in any way, to Defendant's requests for EUOs, the reasonableness of these requests will not be considered.").[16]

Plaintiff's reliance on Celtic Medical P.C. v. Progressive Ins. Co., 194 Misc.2d 429, 755 N.Y.S.2d 209, 2002 N.Y. Slip Op. 22766 (Dist. Ct., Nassau Co. Dec. 03, 2002) for the proposition that the reasonableness of an EUO is a question of fact for a jury to decide is misplaced. In Celtic Medical, the Nassau County District Court addressed the question of whether it was reasonable for an insurer to demand an EUO prior to the submission of a formal no-fault claim, and noted that the insured's address on the subsequently submitted claim differed from the address where the EUO notices were sent. Celtic Medical, 194 Misc.2d at 431.[17]  Here by contrast, the decision to conduct an EUO was made after Plaintiff submitted an incomplete claim form that failed to explain how the injuries were

---

[15] (citing Crescent Radiology, PLLC v. American Tr. Ins. Co., 31 Misc.3d 134[A], 2011 WL 1448133 [App. Term 9th & 10th Jud. Dists.2011]; Jamaica Medical Supply, Inc. v. Encompass Indem. Co., 36 Misc.3d 160[A], 2012 WL 4125791 [App. Term 2nd, 11th & 13th Jud. Dists.2012];  Viviane Etienne Medical Care, P.C. v. State Farm Mut. Auto Ins. Co., 35 Misc.3d 127[A], 2012 WL 1123046 [App. Term 11th & 13th Jud. Dists.2012]; and see Westchester County Med. Ctr. v. New York Cent. Mut. Fire Ins. Co., 262 A.D.2d 553, 555, 692 N.Y.S.2d 665 [2d Dept.1999] ["(a)ny confusion on the part of the plaintiff as to what (verification) was being sought should have been addressed by further communication, not inaction"]).")

[16] (citing Westchester County Med. Ctr. v. New York Cent. Mut. Fire Ins. Co., 262 A.D.2d 553 (2d Dep't 1999); Eagle Surgical Supply, Inc. v. AIG Ins. Co., 36 Misc.3d 153[A], 2012 N.Y. Slip Op 51711[U] (App Term, 2d, 11th & 13th Jud. Dists,); All Boro Psychological Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 36 Misc.3d 135[A], 2012 N.Y. Slip Op 51346[U] (App Term, 2d, 11th & 13th Jud. Dists. 2012); Crescent Radiology, PLLC v. American Tr. Ins. Co., 31 Misc.3d 134[A], 2011 N.Y. Slip Op 50622[U] (App Term, 9th & 10th Jud Dists 2011); Urban Radiology, P.C. v. Tri–State Consumer Ins. Co., 27 Misc.3d 140[A], 2010 N.Y. Slip Op 50987[U] (App Term, 2d, 11th & 13th Jud. Dists. 2010))

[17] From this last fact the Celtic Medical Court inferred "for purposes of th[e summary judgment] motion that the [insured], through no fault of her own, did not receive the demands, which would excuse her non-appearance at the examinations."  Celtic Medical, 194 Misc.2d at 431.

sustained, and there is no dispute that Plaintiff received the first two EUO notices - he filed objections to them - and it is undisputed that the third EUO notice was sent in the ordinary course of business by regular and certified mail to Plaintiff's address. The regular mailing of the third EUO notice was not returned by the United States Postal Department as undeliverable, and both mailings of the third EUO notice, having been mailed in the ordinary course of business and to the same address that the prior received-EUO notices were mailed, are presumed to have been delivered to Plaintiff. See Lopes v. Gonzales, 468 F.3d 81, 85–86 (2d Cir. 2006)(*per curiam*) (When a notice is sent by regular mail and "the record establishes that the notice was accurately addressed and mailed in accordance with normal office procedures," rebuttable presumption of receipt is created). Because Plaintiff has presented no admissible evidence in opposition to this motion, he has not overcome this presumption of receipt.

For these reasons, the Court finds no basis to deny Defendant's motion on the reasonableness of the decision to conduct an EUO of Plaintiff, or because the EUO notices did not state a reason for the examination.

### e.  Precluded from Conducting EUO Because of Investigation

Next, Plaintiff argues that Defendant was precluded from conducting an EUO because its investigator, Mark Augustus, previously investigated the occurrence.  Plaintiff cites no authority for the proposition that an insurance company is precluding from examining a claimant under oath if its investigator conducted an investigation.  Further, there is no evidence in the record that Mark Augustus conducted an investigation.  Rather, Plaintiff merely offers Mr. Augustus's business card, apparently left for Plaintiff, with the hand-written notation for Plaintiff to call Mr. Augustus.  There is no indication that the two

20

spoke, or that Mr. Augustus conducted any substantive investigation precluding the need for an EUO.  Therefore, the argument provides Plaintiff no relief.

**f.  Intentional Infliction of Emotional Distress**

In response to a motion for summary judgment, Plaintiff also argues that the Defendant's conduct amount to the intentional infliction of emotional distress.  Plaintiff has neither pled such a claim in his Second Amended Complaint nor sought or been granted leave to amend to add this claim.  It is well settled that papers on a motion for summary judgment is not the proper vehicle to add a new claim. McChesney v. Bastien, Slip Copy, 2012 WL 4338707, at *5 n.14 (N.D.N.Y. Sept. 12, 2012)(citing cases).

Moreover, even if Plaintiff's papers were construed as a Rule 15 motion to amend the Second Amended Complaint, the motion would be denied. See Fed. R. Civ. P. 15(a)(2) (after the time to amend as of right has passed, "[t]he court should freely" grant leave to amend "when justice so requires"); Foman v. Davis, 371 U.S. 178, 182 (1962) (the court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice and futility of the amendment, in determining whether to grant leave to amend). Discovery and the time to seek amendment of the pleadings has closed.  At this late date in the proceedings, it would unnecessarily delay the action and would be prejudicial to the Defendant to permit Plaintiff to amend the complaint. Justice does not require the Court to permit Plaintiff to add new claims at this point in the litigation.

Further, the allegations in Plaintiff's papers do not allege a meritorious basis for an intentional infliction of emotional distress claim. Such a claim requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the

conduct and the injury; and (4) severe emotional distress. <u>Conboy v. AT & T Corp.</u>, 241

F.3d 242, 258 (2d Cir. 2001); <u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir.1999).  There

can be liability under this tort only where the conduct has been so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society. <u>Stuto</u>, 164 F.3d at 827.

The allegations in Plaintiff's memorandum of law concerning Defendant's handling of his

No-Fault claim do not plausibly allege a course of conduct so extreme or outrageous as to

be utterly intolerable in a civilized society.  As such, it would be futile to add this claim.

Accordingly, Plaintiff's allegations alleging the intentional infliction of emotional

distress are insufficient to defeat Defendant's motion for summary judgment or to warrant

an amendment to the Second Amended Complaint.

### g.  Extra-Contractual Damages

Plaintiff also cannot seek extra-contractual damages in his Cross-Motion for

Summary Judgment inasmuch as all causes of action that would justify such damages

were previously dismissed. <u>See</u> 10/17/11 Dec. & Ord., dkt. # 60 (dismissing claims for

breach of covenant of good faith and fair dealing, punitive damages, corporate

malfeasance/tortious interference, New York Insurance Law §2601 violations,

fraud/misrepresentation of business records, independent tort of bad faith, consequential

damages and unjust enrichment.)

### h.  Plaintiff's Cross-motion & Motion for Reconsideration

As indicated above, Plaintiff failed to file a Statement of Material Facts in support of

his cross-motion as required by Local Rule 7.1(a)(3).  The failure of a moving party to file a

properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary

judgment motion. <u>Riley v. Town of Bethlehem</u>, 5 F. Supp.2d 92, 93 (N.D.N.Y.1998).

The Court also finds no merit to Plaintiff's separate motion for reconsideration of the Court's decision to strike Plaintiff's papers filed on October 5, 2012 [dkt. # 120]. <u>See</u> Order to Strike, dkt. # 121; Mot. for Recon., dkt. # 123. The papers were filed without Court permission and were clearly intended to serve as reply papers on the cross-motion and as sur-reply papers on Defendant's summary judgment motion. The Local Rules provide that when a cross-motion is filed, "[t]he cross-moving party may not reply in further support of its cross-motion without the Court's prior permission." N.D.N.Y. L.R. 7.1(c). The Local Rules also provide that "[a] sur-reply is not permitted" on a summary judgment motion. N.D.N.Y. 7.1(b)(1). Plaintiff's contention in this motion that he "was not aware or notified by the Court of what a summary judgment is and that a proper response must be filed," Recon. Mot., ¶ 10, is belied by the record. As indicated above, Plaintiff was served with the Court's standard summary judgment notification for pro se litigants. <u>See</u> dkt. # 110-1, fn. 5, *supra*. Moreover, the stricken documents did not contain a proper Statement of Material Facts, but rather constituted arguments responding to the arguments raised by Defendant in opposition to the cross-motion and made in reply to Plaintiff's opposition to Defendant's original motion. Dkt. # 120.

Without a Statement of Material Facts supporting the cross-motion, Plaintiff fails to establish that Defendant breached any term of the Policy, or that it denied his claims in violation of New York's No-Fault Law. Accordingly, Plaintiff's cross-motion for summary judgment is denied.

### i. Defendant's Motion for Summary Judgment

Based on the uncontested facts as discussed above, there is no material question

of fact that State Farm timely noticed Plaintiff for an EOU, that he received the notices, that he did not appear for his EUOs, and that Defendant timely denied Plaintiff's claims for No-Fault benefits based upon his failure to attend the EUOs.  Because the appearance of Plaintiff at a duly noticed EUO is a condition precedent to Defendant's liability on the Policy, Stephen Fogel Psychological, P.C. v. Progressive Cas. Ins. Co., 35 A.D.3d 720, 722 (2d Dep't 2006)(citing 11 NYCRR 65-1.1); LDE Medical Services, P.C. v. Encompass Ins.,29 Misc.3d 130(A), 918 N.Y.S.2d 398 (Table), 2010 WL 4242233, 2010 N.Y. Slip Op. 51845(U) ((N.Y. Sup. App. Term 2nd, 11th And 13th Judicial Districts, Oct. 20, 2010)(also citing11 NYCRR 65-1.1), Plaintiff's failure to attend the EUOs entitles Defendant to judgment dismissing Plaintiff's remaining claims.  Inasmuch as Plaintiff's claims have been dismissed, the Court need not reach the issues of whether Plaintiff properly revoked the AOBs to certain providers, or whether he incurred expenses from other providers.

**j.  Additional Motions**

Plaintiff's motion to appoint counsel for trial [dkt. # 125], and his motion for a judicial settlement conference [dkt. # 126] are denied as moot.

**k.  Doe Defendant**

The John Doe defendant has not been identified or served with process.  The time to do so has expired.  Consequently, all claims against John Doe are dismissed for failure to prosecute.

**V.     CONCLUSION**

For the reasons set forth above:

(a) Defendant's motion for summary judgment [dkt. # 108] is GRANTED and Plaintiff's remaining claims are DISMISSED;

(b) Plaintiff's cross-motion for summary judgment [dkt. # 117] is DENIED;

(c) Plaintiff's motions challenging the Court's decision to strike his reply/sur-reply papers [dkt. # 123] is DENIED;

(d) Plaintiff's motion to appoint counsel for trial [dkt. # 125] is DENIED as moot;

(e) Plaintiff's motion for a judicial settlement conference [dkt. # 126] is DENIED as moot; and

(f) Plaintiff's claims against John Doe are DISMISSED for failure to prosecute.

The Clerk may enter judgment and close the file in this matter.

**IT IS SO ORDERED.**

Dated: February 22, 2013

Thomas J. McAvoy
Senior, U.S. District Judge